**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SAM A. ANTAR<br><br>                        Plaintiff,<br><br>v.<br><br>THE BORGATA HOTEL CASINO AND SPA, LLC; B ONLINE CASINO; BETMGM, LLC; MGM RESORTS INTERNATIONAL INC.; ENTAIN PLC; JOHN DOES 1-10; MARY DOES 1-10; and XYZ CORPORATIONS 1-10,<br><br>                        Defendants. | CIVIL ACTION:  2:22-cv-05785-MCA-LDW<br><br><br>**AMENDED COMPLAINT** |

Plaintiff Sam A. Antar ("Sam" or "Plaintiff"), by way of a Complaint by and through his attorney Litt Law, LLC against the defendants Borgata Hotel Casino and Spa; B Online Casino; BetMGM LLC; MGM Resorts International, Inc.; Entain, PLC; John Does 1-10; Mary Does 1-10, and/or XYZ Corporations 1-10 (Collectively "Defendants") does hereby state:

<u>INTRODUCTION</u>

1.    At all times relevant to this Complaint, the Plaintiff was, and exhibited fundamental symptoms of being, a problem gambler.

2.    Problem gambling is classified by both the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders and World Health Organization's International Classification of Diseases as an addiction disorder.

3.    At all times relevant to this Complaint, the Defendants were trained to recognize the nature and symptoms of problem gambling behavior.

4.    Defendants' involvement in Sam's addiction was not passive.

5.    Defendants knew Sam was a problem gambler because from approximately June 2019 through January 2020, they engaged with him through email, telephone, and text message on an almost daily basis.

6.    From June 2019 through January 2020, Sam and the Defendants exchanged over 1,800 text messages.

7.    Defendants exploited Sam's problem gambling disorder to his detriment and for its own benefit by ceaselessly enticing Sam to gamble.

8.    Defendants did this through relentless financial incentives, gifts, and various other forms of manipulation such as telling the Plaintiff: "[h]ey Sammy I need you to deposit more."

9.    Sam ultimately gambled close to thirty million dollars with Defendants in 2019 through a series of over 100,000 bets, as his gambling addiction disorder grew worse and worse.

10.    The Defendants' relentless enticements of the Plaintiff to gamble when they knew he suffered and/or exhibited the signs of a problem gambler was an unconscionable commercial practice, in violation of the New Jersey Consumer Fraud Act.


THE PARTIES

11.    Plaintiff is an individual residing in the State of New Jersey, City of Long Branch and City of New York, diagnosed with gambling addiction disorder, whose compulsive gambling was known to Defendants.

12.    Plaintiff was designated as a VIP "NOIR" MGM Rewards member.

13.    At all times relevant to this Complaint, Plaintiff engaged in gambling activity by using his BetMGM (Sama00) and Borgata (Sama000) usernames within State of New Jersey borders.

14.    The Borgata Hotel Casino and Spa, LLC ("the Borgata") is the largest and top-grossing casino in the State of New Jersey, earning in excess of $730 million in annual revenue, and is operated by MGM Resorts International, Inc. The Borgata is a limited liability company with a principal place of business at 1 Borgata Way, Atlantic City, New Jersey 08401.

15.    B Online Casino ("B ONLINE") is one of the nation's oldest legal online gambling sites, and a product of MGM Resorts International, Inc. which operates several online betting brands under the BetMGM, LLC banner in the State of New Jersey. B Online is a limited liability company with a principal place of business at 1 Borgata Way, Atlantic City, New Jersey 08401.

16.    BetMGM, LLC ("BetMGM") is a market leading online gaming and sports betting company that maintains exclusive access to all of MGM's online gaming via market leading brands, including the Borgata. BetMGM earned $850 million in net revenues in 2021, and $271 million in first quarter of 2022 with a projected 2022 net revenue exceeding $1.3 billion. BetMGM is a limited liability company located at Harborside Plaza 3, 210 Hudson Street, Suite 602, Jersey City, New Jersey 07311.

17.    MGM Resorts International, Inc. ("MGM RESORTS") is an S&P 500 global hospitality and entertainment company that operates several online betting brands including B CASINO and, among other facilities, the Borgata. MGM RESORTS earned $11.88 billion in annual revenue for the twelve months ending in June 2022. MGM RESORTS is a corporation with its principal place of business at 3600 S. Las Vegas Avenue, Bellagio Hotel & Casino, Las Vegas, Nevada 89109.

18.    Entain PLC ("ENTAIN"), formerly GVC Holdings, PLC, is one of the largest online betting technology companies in the world. In 2018, ENTAIN launched a joint venture with MGM RESORTS to create an online gaming and sports betting platform in the United States.

BetMGM, borne out of this partnership, offers online gaming and sports betting using ENTAIN's U.S. licensed technology via market leading brands, including BetMGM and B CASINO. ENTAIN earned greater than $5.1 billion in annual revenue in 2021 and is a public limited company with its principal place of business at 32 Athol Street, Douglas, Isle of Man IM11JB.

19.     John Does 1-10 and Mary Does 1-10 are individuals whose identities are presently unknown to Plaintiff responsible for all or part of the acts and omissions complained of herein.

20.     XYZ Corporations 1-10 are entities whose identities are presently unknown to Plaintiff responsible for all or part of the acts and omissions complained of herein.

21.     Quinton Hogan ("Hogan") was a VIP Account Manager employed by the Defendants Borgata and BetMGM, responsible for retaining and maximizing the profitability of Borgata VIP online gaming and gambling customers.

22.     Jerry Liang ("Liang") was a VIP Account Manager employed by the Defendants Borgata and BetMGM responsible for retaining and maximizing the profitability of Borgata VIP online gaming and gambling customers.


## JURISDICTION AND VENUE

23.     This matter was removed to United States District Court, District of New Jersey, by the Defendants' Notice of Removal filed September 29, 2022.


## FACTUAL ALLEGATIONS

24.     Beginning in or about 2019, Plaintiff began gambling on land-based and online gaming platforms offered by the Borgata and Defendants.

25.     Soon after, the Borgata invited Plaintiff to be designated with "NOIR" VIP status, the highest available rewards status offered by Defendants.

26.     The NOIR program provided Defendants precise records and data about Plaintiff and other patrons' gambling patterns and behavior. Upon information and belief, Defendants maintain analytic tools, software, and player tracking data for NOIR gamblers for the purpose of maximizing the profitability of these customers.

27.     NOIR customers such as Plaintiff are assigned a dedicated VIP host by Defendants.

28.     Hogan and Liang were assigned by the Defendants to be the Plaintiff's dedicated VIP host; Hogan from approximately June 7, 2019 through November 27, 2019, and Liang from approximately December 16, 2019 through January 16, 2020.

29.     In 2019, Plaintiff's gambling activity exceeded $24 million, including more than $5 million in a 16-day period in January 2020. From May 2019 to January 2020, Plaintiff placed more than 100,000 online bets.

Nature and Symptoms of Problem Gambling

30.     At all times relevant to this Complaint, Defendants were obligated by N.J.A.C. 13:69O-1.2(x) to implement training for employees who have direct contact with patrons via phone, e-mail, electronic chat, or other means on the recognition of the nature and symptoms of problem gambling behavior, and how to assist players in obtaining information regarding help for a gambling problem.

31.     At all times relevant, Defendants were in full compliance with N.J.A.C. 13:69O-1.2(x).

32.     Such training is obligated by N.J.A.C. 13:69O-1.2(x) to occur at the start of an employee's employment, and at regular intervals thereafter.

33.    At all times relevant, Hogan was an employee with direct contact with patrons via phone, e-mail, electronic chat, or other means under N.J.A.C. 13:69O-1.2(x).

34.    At all times relevant, Liang was an employee with direct contact with patrons via phone, e-mail, electronic chat, or other means under N.J.A.C. 13:69O-1.2(x).

35.    At all times relevant, Hogan was trained to recognize the nature and symptoms of problem gambling behavior.

36.    At all times relevant, Liang was trained to recognize the nature and symptoms of problem gambling behavior.

37.    The amount of money Plaintiff gambled with the Defendants between May 2019 and January 2020 was a fundamental and visible symptom of problem gambling.

38.    At all times relevant, Defendants knew how much money the Plaintiff was gambling.

39.    Hogan was trained to recognize that the amount of money Plaintiff gambled with Defendants between May 2019 and January 2020 was a fundamental symptom of problem gambling.

40.    Hogan did, in fact, recognize that the amount of money Plaintiff gambled with Defendants between May 2019 and January 2020 was a fundamental symptom of problem gambling.

41.    Liang was trained to recognize that the amount of money Plaintiff gambled with Defendants between May 2019 and January 2020 was a fundamental symptom of problem gambling.

42.    Liang did, in fact, recognize that the amount of money Plaintiff gambled with Defendants between May 2019 and January 2020 was a fundamental symptom of problem gambling.

43.     Defendants knew that Plaintiff was a problem gambler based on the amount of money he gambled with them between May 2019 and January 2020.

44.     The frequency with which Plaintiff gambled with the Defendants between May 2019 and January 2020 was a fundamental and visible symptom of problem gambling.

45.     At all times relevant, Defendants knew the frequency with which the Plaintiff was gambling.

46.     Hogan was trained to recognize that the frequency with which Plaintiff gambled between May 2019 and January 2020 was a fundamental symptom of problem gambling.

47.     Hogan did, in fact, recognize that the frequency with which Plaintiff gambled between May 2019 and January 2020 was a fundamental symptom of problem gambling.

48.     Liang was trained to recognize that the frequency with which Plaintiff gambled was a fundamental symptom of problem gambling.

49.     Liang did, in fact, recognize that the frequency with which Plaintiff gambled between May 2019 and January 2020 was a fundamental symptom of problem gambling.

50.     Defendants knew that Plaintiff was a problem gambler based on the frequency with which he gambled between May 2019 and January 2020.

51.     Plaintiff's "chasing" of his losses with the Defendants between May 2019 and January 2020 was a fundamental and visible symptom of problem gambling.

52.     At all times relevant, Defendants knew that Plaintiff frequently "chased" his losses with them.

53.     Hogan was trained to recognize that Plaintiff's "chasing" of his losses with Defendants between May 2019 and January 2020 was a fundamental symptom of problem gambling.

54.    Hogan did, in fact, recognize that Plaintiff's "chasing" of his losses with Defendants between May 2019 and January 2020 was a fundamental symptom of problem gambling.

55.    Liang was trained to recognize that Plaintiff's "chasing" of his losses with Defendants between May 2019 and January 2020 was a fundamental symptom of problem gambling.

56.    Liang did, in fact, recognize that Plaintiff's "chasing" of his losses with Defendants between May 2019 and January 2020 was a fundamental symptom of problem gambling.

57.    Defendants knew that Plaintiff was a problem gambler based on his "chasing" losses with them between May 2019 and January 2020.

58.    The Plaintiff's preoccupation with gambling, including but not limited to thinking of ways to get money with which to gamble, between May 2019 and January 2020 was a fundamental and visible symptom of problem gambling.

59.    At all times relevant, Defendants knew of Plaintiff's preoccupation with gambling, including but not limited to thinking of ways to get money with which to gamble.

60.    Hogan was trained to recognize that Plaintiff's preoccupation with gambling, including but not limited to thinking of ways to get money with which to gamble, between May 2019 and January 2020 was a fundamental symptom of problem gambling.

61.    Hogan did, in fact, recognize that Plaintiff's preoccupation with gambling, including but not limited to thinking of ways to get money with which to gamble, between May 2019 and January 2020 was a fundamental symptom of problem gambling.

62.    Liang was trained to recognize that Plaintiff's preoccupation with gambling, including but not limited to thinking of ways to get money with which to gamble, between May 2019 and January 2020 was a fundamental symptom of problem gambling.

63.    Liang did, in fact, recognize that Plaintiff's preoccupation with gambling, including but not limited to thinking of ways to get money with which to gamble, between May 2019 and January 2020 was a fundamental symptom of problem gambling.

64.    Defendants knew that Plaintiff was a problem gambler based on preoccupation with gambling, including but not limited to thinking of ways to get money with which to gamble, between May 2019 and January 2020.

65.    The Plaintiff's lying to conceal the extent of his involvement with gambling and reliance on others to provide money to relieve his desperate financial situations caused by gambling was a fundamental and visible symptom of problem gambling.

66.    Beginning with service of a *Subpoena Duces Tecum* on Defendants by the New Jersey Division of Criminal Justice on August 15, 2019, Defendants knew that Plaintiff was lying to conceal the extent of his involvement with gambling and/or relying on others to provide money to relieve his desperate financial situations caused by gambling.

67.    Hogan was trained to recognize that Plaintiff's lying to conceal the extent of his involvement with gambling and/or relying on others to provide money to relieve his desperate financial situations caused by gambling was a fundamental symptom of problem gambling.

68.    Hogan did, in fact, recognize that Plaintiff's lying to conceal the extent of his involvement with gambling and/or relying on others to provide money to relieve his desperate financial situations caused by gambling was a fundamental symptom of problem gambling.

69.    Liang was trained to recognize that Plaintiff's lying to conceal the extent of his involvement with gambling and/or relying on others to provide money to relieve his desperate financial situations caused by gambling was a fundamental symptom of problem gambling.

70.    Liang did, in fact, recognize that Plaintiff's lying to conceal the extent of his involvement with gambling and/or relying on others to provide money to relieve his desperate financial situations caused by gambling was a fundamental symptom of problem gambling.

71.    Defendants knew that Plaintiff's lying to conceal the extent of his involvement with gambling and/or relying on others to provide money to relieve his desperate financial situations caused by gambling was a fundamental symptom of problem gambling.

72.    At all times relevant, a "cooling-off" period away from gambling has been a recognized and fundamental way to help a problem gambler with his or her addiction.

73.    At all times relevant, Defendants knew that a "cooling-off" period away from gambling was a recognized and fundamental way to help a problem gambler with his or her addiction.

74.    Liang was trained to know that a "cooling-off" period away from gambling was a recognized and fundamental way to help a problem gambler with his or her addiction.

75.    Liang did, in fact, know that a "cooling-off" period away from gambling was a recognized and fundamental way to help a problem gambler with his or her addiction.

76.    Among other skills and experience, Liang's resume lists his ability to "[C]onvert lapsed VIP players."

77.    "Converting lapsed VIP players" is the targeting of problem gamblers for a premature termination of their cooling-off period.

78.    Defendants knew and rewarded Liang for "converting lapsed VIP players."

79.    Liang's job description included preventing VIP players from lapsing in the first place.

80.    Defendants rewarded Liang for preventing VIP players from lapsing in the first place.

81.    Hogan's job included preventing VIP players from lapsing in the first place.

82.    Defendants rewarded Hogan for preventing VIP players from lapsing in the first place.

83.  Liang's job included preventing Plaintiff from lapsing.

84.  Hogan's job included preventing Plaintiff from lapsing.

85.  Liang's job included maximizing the amount of money gamblers gambled with Defendants.

86.  Hogan's job included maximizing the amount of money gamblers gambled with Defendants.

87.  Liang's job included maximizing the amount of money Plaintiff gambled with Defendants.

88.  Hogan's job included maximizing the amount of money Plaintiff gambled with Defendants.

89.  Liang's job included the development of a quasi-personal relationship with gamblers so that they felt comfortable with and trusted him.

90.  Hogan's job included the development of a quasi-personal relationship with gamblers so that they felt comfortable with and trusted him.

91.  Liang's job included the development of a quasi-personal relationship with the Plaintiff so that Plaintiff felt comfortable with and trusted him.

92.  Hogan's job included the development of a quasi-personal relationship with Plaintiff so that Plaintiff felt comfortable with and trusted him.

### Defendants' Enticements to Plaintiff to Gamble

93.  Between June 7, 2019 and January 16, 2020, the Plaintiff and Defendants communicated by telephone, email, and text message frequently.

94.    Between June 7, 2019 and January 16, 2020, the Plaintiff and Defendants exchanged more than 1,800 text messages.

95.    Of the 223 days between June 7, 2019 and January 16, 2020, the Plaintiff and Defendants communicated on more than half -- at least 126.

96.    The communications frequently began first thing in the morning, and continued throughout regular working hours.

97.    The subject of the communications was almost always financial bonuses, deposit incentives, and credits for past gambling losses.

<u>Defendants' Enticements to Plaintiff to Gamble June 2019 – July 2019</u>

98.    On June 7, 2019, the Defendants sent Plaintiff a text message informing him that a request for a $2,000 bonus was entered on his behalf.

99.    The bonus and communication in the immediately preceding paragraph were given by Defendants for the purpose of enticing the Plaintiff to gamble.

100.    On June 11, 2019, the Defendants sent Plaintiff a text message informing him that he was provided with a $3,000 bonus.

101.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

102.    On June 17, 2019, the Defendants sent Plaintiff a text message informing him that a $1,000 bonus was "coming soon."

103.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

104.    On June 24, 2019, the Defendants sent Plaintiff a text message informing him that he would receive a free hotel room at the Borgata.

105.    The free hotel and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

106.    On July 2, 2019, the Defendants sent Plaintiff a text message informing him that he was receiving a $5,000 bonus.

107.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

108.    On July 5, 2019, the Defendants sent Plaintiff a text message asking if he "want(ed) a (deposit) match Today (sic).

109.    The deposit match and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

110.    On July 9, 2019, the Defendants sent Plaintiff a text message asking if he wanted a $5,000 deposit match *per week*.

111.    The deposit matches and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

112.    Also on July 9, 2019, the Defendants sent Plaintiff a text message telling him he would be receiving a $2,000 bonus.

113.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

114.    On July 17, 2019, the Defendants sent Plaintiff a text message telling him he would be receiving a "small bonus."

115.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

116.    On July 18, 2019, the Defendants sent Plaintiff a text message telling him he would be receiving a $500 bonus.

117.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

118.    Also on July 18, 2019 Defendants informed the Plaintiff that he had received $37,518.99 in bonuses this month while only depositing $28,315.

119.    Also on July 18, 2019, Plaintiff informed the Defendants that he was going to cease gambling with them.

120.    Defendants sought to influence the Plaintiff's decision by reminding him that they "have (Plaintiff) a 5k match with and (sic) extra 2k," and that "[o]ther players are not getting anywhere near that I can tell you," and "the most (other players) get is maybe 1k if that."

121.    Also on July 18, 2019, Defendants offered to "work out a cash back deal" with the Plaintiff.

122.    The cash back deal and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

123.    47 text messages were exchanged between the Defendants and Plaintiff on July 18, 2019 after Plaintiff told Defendants he was going to stop gambling.

124.    On July 26, 2019, the Defendants sent Plaintiff a text message telling him he was given a $3,000 bonus, plus a reminder that Defendants had matched his $500 deposit earlier in the week.

125.    The bonus, deposit match, and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

126.    On July 29, 2019, the Defendants sent Plaintiff a text message telling him he was given a $300 bonus.

127.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.


### Defendants' Enticements to Plaintiff to Gamble August 2019 – September 2019

128.    On August 6, 2019, the Defendants sent Plaintiff a text message telling him he would be receiving "$50 extra bucks."

129.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

130.    Beginning August 9, 2019, Defendants began expressing their dissatisfaction to Plaintiff about the amounts Plaintiff was depositing.

131.    On August 9, 2019, Defendants asked Plaintiff: "Do you think for your next match you can just do the 5k deposit (sic)?"

132.    On August 12, 2019, Defendants told Plaintiff: "I'm going to put your match in soon if you do a 5k deposit."

133.    Also on August 12, 2019, Defendants sent Plaintiff a text message telling him he was being given $300 in credit from the previous week's losses.

134.    The credit and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

135.    Also on August 12, 2019, Defendants chided Plaintiff: "[i]f you made deposits like you used to I can give you more…[y]our (sic) killing me here."

136.    Also on August 12, 2019, Defendants told Plaintiff that a bonus would be coming at noon that day.

137.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

138.    On August 19, 2019, Defendants sent Plaintiff a text message telling him that he would be receiving a credit shortly.

139.    The credit and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

140.    On August 21, 2019, the Defendants sent Plaintiff a text message informing him that he would receive two free suite tickets to the August 24 Yankee game, including full catering.

141.    The gifts and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

142.    On August 23, 2019, the Defendants sent Plaintiff text messages informing him that a bonus and credit were imminent.

143.    The bonus, credit, and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

144.    On September 4, 2019, the Defendants sent the Plaintiff a text message saying: "Hey Sammy I need you to deposit more."

145.    A second text message on September 4, 2019 said: "[T]he 5k match was intended if you deposited 5k or more."

146.    A third text message on September 4, 2019 said: "You haven't come close to that depositing in quite some time."

147.    Another text message from Defendants to Plaintiff on September 4, 2019 said: "I'm fine with the small deposits but the 5k match was intended if you deposited 5k or more in a week."

148.    Another text message from Defendants to Plaintiff on September 4, 2019 said: "[O]k I can do one big match a week for your choosing or give you some relief on your losses with a bonus…[j]ust put in $150."

Defendants' Enticements to Plaintiff to Gamble October 2019 – November 2019

149.    On October 8, 2019, the Defendants communicated to Plaintiff that he would be receiving a $5,000 bonus.

150.    The bonus and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

151.    On October 10, 2019, the Defendants communicated to Plaintiff that he had received a $2,000 bonus, and could claim an additional $1,000.

152.    The bonuses and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

153.    On November 1, 2019, Defendants communicated to Plaintiff that they would add a deposit match if he made a deposit.

154.    The deposit match and communication in the immediately preceding paragraph were given by the Defendants for the purpose of enticing the Plaintiff to gamble.

155.    On November 13, 2019, Defendants sent the Plaintiff a text message asking: "You want match today?"

156.    The deposit match and communication in the immediately preceding paragraph were offered and given by the Defendants for the purpose of enticing the Plaintiff to gamble.

157.    On November 24, 2019, the Defendants gave Plaintiff event tickets and reimbursement for parking.

158.    The event tickets and free parking were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

159.    On November 26, 2019, the Defendants sent Plaintiff a text message telling him he was being given two $500 bonuses plus a deposit match of $600.

160.    The bonuses, deposit match, and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

161.    On November 27, 2019, the Defendants sent Plaintiff a text message telling him he was being given an extra $500 bonus.

162.    The bonus and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.


Defendants' Enticements to Plaintiff to Gamble December 2019 – January 2020

163.    On or about December 16, 2019, Liang took over from Hogan as the Plaintiff's assigned VIP host.

164.    On December 16, 2019, the Defendants sent Plaintiff a text message telling him his account was being "loaded up;" Defendants "loaded up" Plaintiff's account with multiple bonuses of $1,000.

165.    The "loading up" of Plaintiff's account and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

166.    On December 17, 2019, the Defendants sent Plaintiff a text message telling him he was being given a $3,000 bonus, with another $1,000 to come later in the day.

167.     The bonuses and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

168.     Also on December 17, 2019, the Defendants sent Plaintiff a text message telling him to let them know when he needs an additional reload.

169.     The offer for a reload and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

170.     On December 18, 2019, the Defendants sent Plaintiff a text message telling the Plaintiff they were adding an additional $2,000 bonus.

171.     The additional bonus and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

172.     On December 19, 2019, the Defendants sent Plaintiff a text message telling him that his account was being "reloaded," and he was being given additional money for a deposit match for a total of $3,000.

173.     The bonuses, deposit match, and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

174.     On December 20, 2019, the Defendants sent Plaintiff a text message telling him that his account was loaded with bonus money.

175.     The bonus and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

176.     On December 23, 2019, the Defendants sent Plaintiff a text message telling him that Defendants added four $500 bonuses to his account.

177.     The bonuses and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

178.    On December 24, 2019, the Defendants sent Plaintiff a text message telling him that Defendants added deposit matches to his account.

179.    The deposit matches and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

180.    On December 26, 2019, the Defendants sent Plaintiff a text message telling him that Defendants added deposit matches and a $1,000 bonus to his account.

181.    The deposit matches, bonus, and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

182.    On December 27, 2019, the Defendants sent Plaintiff a text message telling him that Defendants would be adding a $600 deposit match and small bonus to his account.

183.    The deposit matches, bonus, and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

184.    On December 30, 2019, the Defendants sent Plaintiff a text message telling him that Defendants added bonuses to his account.

185.    The bonuses and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

186.    On December 31, 2019, the Defendants sent Plaintiff a text message telling him that Defendants added a $3,000 bonus to his account because Liang "was able to work someone over."

187.    The bonus and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

188.    On January 2, 2020, the Defendants sent Plaintiff a text message telling him that Defendants would be adding a deposit match and $500 bonus to his account.

189.    The deposit match, bonus, and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

190.    On January 3, 2020, the Defendants sent Plaintiff a text message telling him that Defendants would be adding $5,000 to his account.

191.    The money and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

192.    On January 4, 2020, the Defendants sent Plaintiff a text message telling him that Defendants "[l]oaded (him) up" for the day.

193.    The money and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

194.    On January 6, 2020, the Defendants sent Plaintiff a text message telling him that they would "load (him) up right now" with bonus money and deposit matches.

195.    The bonus, deposit matches, and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

196.    Also on January 6, 2020, the Defendants told Plaintiff: "Your bonus percentage is getting out of control and I'm going to need to keep it down" to encourage Plaintiff to deposit more money.

197.    On January 7, 2020, the Defendants sent Plaintiff a text message telling him again that they would load the Plaintiff up with bonus money and/or deposit matches.

198.    The bonus, deposit matches, and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

199.    On January 8, 2020, the Defendants sent Plaintiff a text message telling him again that they would load the Plaintiff up with bonus money and/or deposit matches.

200.    The bonus, deposit matches, and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

201.    Later on January 8, 2020, the Defendants sent Plaintiff a text message telling him that he would add another $500 to his account.

202.    The money and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

203.    On January 9, 2020, the Defendants sent Plaintiff a text message telling him that three deposit matches plus an additional $1,000 deposit match would be added to his account.

204.    The deposit matches and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

205.    On January 10, 2020, the Defendants sent Plaintiff a text message telling him that he was receiving a $1,500 bonus.

206.    The bonus and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

207.    On January 11, 2020, the Defendants sent Plaintiff a text message telling him that Defendants were adding a $3,000 bonus to his account.

208.    The money and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

209.    On January 12, 2020, the Defendants sent Plaintiff a text message telling him that Defendants were adding a $3,000 bonus to his account.

210.    The money and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

211.   On January 13, 2020, the Defendants sent Plaintiff a text message telling him that Defendants were again loading up his account.

212.   The money and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

213.   Also on January 13, 2020, the Defendants sent Plaintiff a text message telling him that a $5,000 deposit match was added to his account.

214.   The deposit and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

215.   On January 14, 2020, the Defendants sent Plaintiff a text message telling him that Defendants were adding a $600 bonus and $1,000 deposit match to his account.

216.   The bonus, deposit match, and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

217.   On January 15, 2020, the Defendants sent Plaintiff a text message telling him that Defendants were adding deposit matches to his account.

218.   The deposit matches and communication in the immediately preceding paragraph were given by the Defendants to Plaintiff for the purpose of enticing the Plaintiff to gamble.

219.   The Defendants provided Plaintiff with countless other bonuses, deposit matches, and gifts between June 2019 and January 2020, to be identified with greater specificity through the course of discovery, all of which were provided by the Defendants for the purpose of enticing the Plaintiff to gamble.

220.   The Defendants continue to attempt to entice the Plaintiff to gamble to the present time; between March 30, 2023 and this Amended Complaint, the Defendants have sent Plaintiff at

least nine emails offering deposit matches, boosts, bonuses, and other offers with subject headings such as "The Offer You Have Been Waiting For Is Here!"

221.    The Plaintiff was at all times relevant vulnerable to enticements to gamble because he was a problem gambler.

222.    Defendants knew that the Plaintiff was vulnerable to enticements to gamble because he was a problem gambler.

223.    The enticements to gamble given to the Plaintiff by the Defendants were provided with the intent to create, nurture, expedite, and/or exacerbate the Plaintiff's gambling addiction.

224.    The Defendants' enticements to gamble had the effect of creating, nurturing, expediting, and/or exacerbating the Plaintiff's gambling addiction.

225.    The Defendants made enticements to gamble to the Plaintiff because he was known by them to be a problem gambler, and/or exhibited symptoms of problem gambling.

226.    The Defendants made enticements to gamble to the Plaintiff despite knowing he was a problem gambler, and/or exhibited symptoms of problem gambling.

227.    The Defendants' creation, nurturing, expediting, and/or exacerbation of the Plaintiff's gambling addiction was the proximate cause, in whole or in part, of damages to the Plaintiff including, but not necessarily limited to, pecuniary losses in an amount to be determined at trial, inclusive of monies lost, severe emotional distress, and the complete devastation of the Plaintiff's professional, personal, and financial life.

## **<u>FIRST COUNT</u>**
### **Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1,** *et seq.*
### **(As Against All Defendants)**

228.    Plaintiff hereby incorporates and restates the allegations contained in all previous paragraphs as if set forth again at full length herein.

229.    At all relevant times, the Plaintiff was a "person" as that term is defined by N.J.S.A. 56:8-1(d) of the New Jersey Consumer Fraud Act.

230.    At all relevant times, Defendants were "persons" as that term is defined by N.J.S.A. 56:8-1(d) of the New Jersey Consumer Fraud Act.

231.    The services offered to the Plaintiff by the Defendants was "merchandise" as defined by N.J.S.A. 56:8-1(c) of the New Jersey Consumer Fraud Act.

232.    The sale of goods and services to Plaintiff by Defendants was a "sale" as defined by N.J.S.A. 56:8-1(e) of the New Jersey Consumer Fraud Act.

233.    The Plaintiff was thereby a consumer entitled to the protections and remedies provided for by the New Jersey Consumer Fraud Act.

234.    Defendants engaged in an unconscionable commercial practice by providing ongoing enticements to gamble between June 2019 and January 2020 while Defendants knew that the Plaintiff was a compulsive gambler and/or that he demonstrated symptoms of being a compulsive gambler.

235.    Defendants engaged in an unconscionable commercial practice by initiating an ongoing series of enticements to gamble which defendants knew would have the effect of creating, nurturing, expediting, and/or exacerbating problem gambling in a significant number of its customers.

236.    As a result of the Defendants' misconduct, the Plaintiff suffered ascertainable loss.

237.    In light of the foregoing, the Defendants violated N.J.S.A. 56:8-1, *et seq.* of the New Jersey Consumer Fraud Act.

238.    The Plaintiff brings this action pursuant to N.J.S.A. 56:8-19 and, in accordance therewith, is entitled to treble damages in an amount to be determined at the time of trial, attorney fees, and court costs.

WHEREFORE, the Plaintiff demands Judgment against Defendants for: a) compensatory damages, b) statutory treble damages under the New Jersey Consumer Fraud Act, c) together with interest, d) reasonable attorney's fees and costs of suit, and e) for such further relief as this Court deems just and equitable.

**SECOND COUNT**
**Negligence**
**(As Against all Defendants)**

239.    Plaintiff hereby incorporates and restates the allegations contained in all previous paragraphs as if set forth again at full length herein.

240.    The Defendants owed Plaintiff a duty of care.

241.    Defendants breached their duty of care to Plaintiff by making ongoing inducements to gamble between June 2019 and January 2020 while Defendants knew or should have known that the Plaintiff was a compulsive gambler.

242.    Defendants breached their duty of care to the Plaintiff by initiating a long series of enticements to gamble which Defendants knew or should have known would have the effect of creating, nurturing, expediting, and/or exacerbating problem gambling in a significant number of its customers.

243.    The Defendants' breach(s) of its duty of care was the actual and proximate cause of the Plaintiff's damages, in whole or in part.

WHEREFORE, the Plaintiff demands judgment against the Defendants for: a) compensatory damages and b) punitive damages, together with c) interest, costs of suit, and such further and other relief as this Court deems just and equitable.

### THIRD COUNT
**Unjust Enrichment**
**(As Against All Defendants)**

244.    Plaintiff hereby incorporates and restates the allegations contained in all previous paragraphs as if set forth again at full length herein.

245.    Plaintiff conferred a benefit on Defendants in the form of monies gambled and lost to the Defendants.

246.    As a result of the enticements and circumstances set forth herein, Defendants have been unjustly enriched at the expense of the Plaintiff, and retention of these monies would be unjust.

WHEREFORE, the Plaintiff demands judgment against the Defendants for: a) compensatory damages, b) punitive damages, together with c) interest, costs of suit, and such further and other relief as this Court deems just and equitable.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues for which a jury is available.

**LITT LAW, LLC**

BY: _____

Matthew Litt, Esq. (007452003)

789 Farnsworth Ave.
Bordentown, NJ 08505
Telephone: (908) 902-7071
MLitt@LittLaw.net
Attorney for Plaintiff