UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

January 31, 2024

VIA ECF

### LETTER ORDER

Re: **Sam A. Antar v. The Borgata Hotel Casino and Spa, LLC; B Online Casino; BetMGM, LLC; MGM Resorts International, Inc.; Entain Plc; John Does 1–10; Mary Does 1–10; And XYZ Corporations 1–10**
**Civil Action No. 22-05785**

Dear Litigants:

Before the Court are (1) Defendant BetMGM LLC's ("BetMGM") Motion to Compel Arbitration, or Alternatively, to Dismiss the Complaint (the "BetMGM Motion"), ECF No. 50, and (2) Defendants MGM Resorts International, Inc. ("MGM") and Marina District Development Company, LLC d/b/a The Borgata Hotel Casino and Spa's ("Borgata" and together with BetMGM, MGM, and the nonmoving Defendants,[1] the "Defendants") Motion to Compel Arbitration or Dismiss the Complaint (the "Borgata Motion" and together with the BetMGM Motion, the "Motions"), ECF No. 51. Plaintiff Sam Antar ("Plaintiff") opposes the Motions. ECF No. 52. For the reasons explained below, the Motions are **GRANTED.**

I. **BACKGROUND**[2]

Plaintiff alleges that Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20 (the "CFA") and are liable for negligence because they persistently enticed Plaintiff

---

[1] According to Defendants, B Online Casino is not a legal entity. See Notice of Removal, ECF No. 1 ¶15. Furthermore, Defendant Entain Plc has not filed any motion nor explicitly joined either of the Motions, and none of the parties make reference in their filings to the applicability of the Motions to Entain Plc. Nevertheless, for the reasons discussed herein, this Order applies in equal force to all Defendants.

[2] For purposes of a motion to dismiss, the Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J., 760 F.3d 297, 302 (3d Cir. 2014)

1

to gamble despite knowing that Plaintiff was a compulsive gambler. See Am. Compl., ECF No. 47 ¶¶ 228–43.

Defendants are entities and individuals that own or operate casinos or online gambling platforms. Id. ¶¶ 14–20. Plaintiff is an individual with an alleged gambling addiction disorder who engaged in gambling activity in New Jersey through casinos and online gambling platforms owned or operated by Defendants. Id. ¶¶ 11–13.

Soon after Plaintiff began gambling, he became a VIP rewards member and was assigned a designated VIP Account Manager employed by Borgata and BetMGM. Id. ¶¶ 21–28. A VIP Account Manager is an individual who is responsible for retaining gambling customers and maximizing the profitability of the casinos and online gambling platforms. Id. ¶ 21. Over a seven-month period, Plaintiff's VIP Account Manager communicated directly with Plaintiff via telephone, e-mail, and text message offering numerous gambling promotions, incentives, and bonuses meant to encourage further gambling by Plaintiff. Id. ¶¶ 93–227. During this period, Plaintiff placed over 100,000 online bets and gambled in excess of $24 million. Id. ¶ 29.

According to Plaintiff, the VIP Account Manager (1) was trained to recognize signs of compulsive gambling; (2) knew or should have known that Plaintiff was a compulsive gambler given, among other things, the frequency and volume of his gambling activity; and (3) nevertheless continued to entice Plaintiff with promotions and incentives, id. ¶¶ 30–92, thus constituting an unconscionable commercial practice in violation of the CFA and a breach of Defendants' duty of care imposed by the Casino Control Act, N.J.S.A. 5:12-1 to -233 (the "CCA"), id. ¶¶ 228–43.

On September 28, 2022, Plaintiff initiated this action in New Jersey state court, and Defendants soon thereafter removed to this Court. See generally Notice of Removal. On May 1, 2023, Plaintiff filed the Amended Complaint with three causes of action: (1) violations of the CFA ("Count I"); (2) negligence ("Count II"); and (3) unjust enrichment ("Count III").[3] Now, Defendants seek an order to compel arbitration or, in the alternative, to dismiss the action.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim to relief. Fed. R. Civ. P. 12(b)(6). While the complaint need not contain detailed factual allegations, Fed. R. Civ. P. 8(a), it must contain "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, "conclusory or bare-bones allegations will no longer survive a motion to dismiss." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).

---

[3] Plaintiff has since conceded dismissal of Count III. Pl.'s Opp'n, ECF No. 52 at 40. Therefore, the Court only focuses on Plaintiff's CFA and negligence claims.

### III. ANALYSIS

Defendants argue that this matter should be sent to arbitration or, in the alternative, should be dismissed in its entirety. See generally Mots. The Court, however, will not address most of Defendants' arguments because, as Defendants correctly point out, Plaintiff's CFA claim is preempted by the CCA and Plaintiff fails to state a negligence claim upon which relief can be granted.

#### A. The CFA Claim

Defendants argue that Plaintiff's CFA claim is based on conduct regulated by CCA regulations—specifically N.J.A.C. 13:69O-1.2(x)—and, therefore, must be dismissed because the two regulatory schemes conflict and "the CFA does not apply when 'a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes.'" ECF No. 51.1 at 31 (quoting Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 270 (N.J. 1997)). Plaintiff counters that the "CFA applies to covered practices [under the CCA], even in the face of other existing sources of regulation." Pl.'s Opp'n at 24 (quoting Bandler v. Landry's Inc., 464 N.J.Super. 311, 321 (App.Div. 2020)). Plaintiff, however, relies exclusively on Bandler, which is distinguishable.

In Bandler, the conflict between the CCA and the CFA revolved around casino advertising practices. 464 N.J.Super. at 315. The court held that the CCA did not preempt the CFA because the advertisement in question was not "gaming-related advertising." Id. at 324. Rather, it was advertising simply meant to attract customers to the casino, a type of advertising for which both the CCA and CFA share a common purpose—preventing deceptive advertising. Id. Conversely, "gaming-related advertising"—advertising that would call for CCA preemption—deals with "highly sophisticated or technical" aspects of gambling and requires "agency expertise" for the resolution of related issues. Id. at 323–24 (quoting Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 192–93 (Super. Ct. App. Div. 2006)); see also Doug Grant v. Greate Bay Casino Corp., 232 F.3d 173, 188–89 (3d Cir. 2000) (CCA exclusively governs advertising that references specific aspects and rules of blackjack); Marcangelo v. Boardwalk Regency Corp., 847 F. Supp. 1222, 1224–25 (D.C.N.J. 1994), aff'd on other grounds, 47 F.3d 88 (3d Cir. 1995) (plaintiff's suit preempted by CCA because slot machine signage referenced specific rule of the game).

Here, the CCA's regulations on compulsive gamblers involve such highly technical aspects of gambling, the resolution of which requires agency expertise. The specific regulation here provides that

> [a]ll Internet gaming operators with employees who have direct contact with patrons . . . shall implement training for those employees . . . addressing [recognizing and responding to compulsive gamblers]. If the training requirement under this

3

> subsection follows the standards set forth by the Council on Compulsive Gambling of New Jersey it shall be deemed sufficient.

N.J.A.C. 13:69O-1.2(x). Plaintiff argues that "[a]t all times relevant . . . Defendants were obligated by [and in compliance with] N.J.A.C. 13:69O-1.2(x)," Am. Compl. ¶¶ 30–31, and that, nonetheless, "Defendants engaged in an unconscionable commercial practice by providing ongoing enticements to gamble between June 2019 and January 2020 while Defendants knew that the Plaintiff was a compulsive gambler and/or that he demonstrated symptoms of being a compulsive gambler," Id. at 234.[4] But as this argument belies, recognizing and responding to compulsive gambling is a highly technical aspect of gambling. These regulations call for specialized training for employees of internet gaming operators. N.J.A.C. 13:69O-1.2(x). The training is meant to follow specific standards promulgated by the Council on Compulsive Gambling of New Jersey. Id. These are issues, like those in Doug Grant and Marcangelo, that call into question specific aspects of gambling and gambling behavior, unlike the generally applicable advertising deception issues discussed in Bandler and Smerling.[5]

Additionally, "the [CFA] is inapplicable where 'the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes.'" Doug Grant, 232 F.3d at 188 (quoting Lemelledo, 150 N.J. at 270). In addition to N.J.A.C. 13:69O-1.2(x), CCA regulations deal pervasively with the responsibilities of casinos as they relate to compulsive gambling: (1) requiring fees that go toward funding efforts to treat and educate problem gamblers, such as those provided by the Council on Compulsive Gambling (N.J.A.C. 13:69A-9.4(c)(5)–(6)); (2) requiring licensees to file with the Division of Gaming Enforcement internal controls that include detailed procedures on reporting problem gamblers (N.J.A.C. 13:69O-1.2(j)); (3) requiring licensees to notify problem gamblers of and direct them to resources that address and treat problem gambling (N.J.A.C. 13:69O-1.2(z)); (4) requiring internet gaming systems to generate, review, and document action taken on weekly reports identifying potential problem gamblers (N.J.A.C. 13:69O-1.9); and (5) providing a comprehensive regulatory scheme for problem gamblers to place themselves on a self-exclusion list (N.J.A.C. 13:69G-2.2). Notably, the CCA is silent on whether casinos or online gambling platforms may induce people who present with compulsive gambling behavior to patronize their businesses. This regulatory scheme would certainly work at cross-purposes with the CFA, especially when Defendants could be, according to Plaintiff, liable for violations of the CFA despite being "in full compliance with [the CCA]."

---

[4] Although these arguments are made with regard to the CFA claim, Plaintiff argues that this same regulation is the basis for foreseeability in his negligence claim. See Pl.'s Opp'n at 33–34.

[5] Plaintiff's own argument to support his negligence claim further bolsters this finding. Plaintiff argues that businesses should be held "responsible when they specifically target for enticement [compulsive gamblers] to continue and increase their [gambling]." Pl.'s Opp'n at 36. But to determine whether it is enticing compulsive gamblers, a casino, through its employees, must first rely on technical training to determine whether a given customer is a compulsive gambler in the first instance.

Am. Compl. ¶ 31; see also Doug Grant, 232 F.3d at 189 ("[T]he goals of the CFA and the [CCA] are not entirely consistent. The [CFA] is concerned with the protection of consumers. The [CCA], however, has dual purposes that must be balanced—the protection of gambling patrons and the protection of the financial viability of the casino industry.").

For these reasons, Plaintiff's CFA claim is dismissed.

### A. The Negligence Claim

Although the Court finds that the CCA preempts Plaintiff's CFA claim, "courts [are] not ousted of jurisdiction over common law damage claims against casinos merely because the claims arose from gambling transactions." Doug Grant, 232 F.3d at 188. Therefore, the CCA does not preempt Plaintiff's negligence claim. That said, the Court dismisses Plaintiff's negligence claim because Plaintiff fails to show that Defendants, as a matter of law, owed a duty to Plaintiff. See GNOC Corp. v. Aboud, 715 F. Supp. 644, 652 (D.N.J. 1989) (quoting Morril v. Morril, 104 N.J.L. 557, 560–61 (1928)).

Defendants are correct that New Jersey courts have not yet recognized the existence of the type of negligence common law duty of care that Plaintiff seeks to impose on Defendants in this case. See Taveras v. Resorts Int'l Hotel, Inc., No. 07-4555, 2008 WL 4372791, at *3 (D.N.J. Sep. 19, 2008) (noting that "the New Jersey Supreme Court has not squarely addressed" whether casinos had a duty to identify and exclude compulsive gamblers); see also Annitto v. Trump Marina Hotel Casino, No. A-1244-04T1, 2005 WL 4344137, at *5 (Super. Ct. App. Div. July 25, 2006) ("There has been no New Jersey appellate decision on the existence of a common law cause of action against a casino for damages resulting from serving or extending credit to an intoxicated patron, or allowing an intoxicated patron to continue gambling.").

Given that the New Jersey Supreme Court has not yet addressed whether such a duty exists, this Court "must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 661 (3d Cir. 1980). And the Third Circuit has already held, based on its prediction of how the New Jersey Supreme Court would decide the issue, that casinos do not owe such a duty to patrons. Hakimoglu v. Trump Taj Mahal Assocs., 70 F.3d 291, 294 (3d Cir. 1995). Furthermore, in Taveras, the plaintiff alleged that casino employees "continued to allow her to gamble in spite of clear indications that she was a compulsive gambler" and even enticed her with "event promotions, gambling tournament invitations, promotions for free televisions, as well as free limousine rides, hotel rooms, food, entertainment, and gift coupons." 2008 WL 4372791, at *1–2. Nevertheless, the court, relying on Hakimoglu, found that the casino owed plaintiff no negligence common law duty of care. Id. at 16.

These cases are directly on point with this action. Plaintiff alleges that Defendants are liable for negligence because they enticed him to gamble despite knowing, or having enough

information that they should have known, that he was a compulsive gambler.  Am. Compl. ¶¶ 228–43.  But this is precisely the type of conduct alleged in Taveras and very similar to the type of conduct in Hakimoglu, both of which held that the New Jersey Supreme Court would not find such a duty to exist.  See supra at 5.  This is further bolstered by the reasoning of the Taveras court:

> The strongest argument against the existence of a casino's duty to restrain compulsive gamblers is the State's deliberate decision not to impose such a duty. "[S]tatutory and administrative controls over casino operations . . . are extraordinary[,] pervasive and intensive . . . . [State law regulates] virtually every facet of casino gambling and its potential impact upon the public. The regulatory scheme is both comprehensive and minutely elaborate." Yet, in spite of the "extraordinary[,] pervasive and intensive" regulations over "virtually every facet of casino gambling," id., the State's policymakers have notably declined to impose the duty upon which Plaintiff relies here.

Taveras, 2008 WL 4372791, at *4 (quoting Knight v. City of Margate, 86 N.J. 374, 381 (1981).  As this Court noted, the CCA pervasively regulates the responsibilities of casinos as they relate to compulsive gamblers but is notably silent on whether casinos or online gambling platforms may induce people who present with compulsive gambling behavior to patronize their businesses.  Supra at 4.  Given this precedent and the comprehensive regulatory framework at play here, this Court joins Hakimoglu and Taveras and finds, as a matter of law, that Defendants do not owe a negligence common law duty of care to Plaintiffs according to the facts as alleged in the Amended Complaint.

Plaintiff makes three counterarguments: (1) the enactment of N.J.A.C. 13:69O-1.2(x), requiring casinos to implement training on the recognition of problem gambling behavior, eliminates the Taveras court's concern regarding a casino's ability to identify problem gamblers and the lack of foreseeability of the dangers of compulsive gambling; (2) this action involved affirmative and aggressive enticement of Plaintiff, not a simple passive allowance of a problem gambler to continue gambling; and (3) today, unlike when Hakimoglu and Taveras were decided, the psychiatric understanding of compulsive gambling has evolved, to the extent that gambling addiction is now recognized as a more severe substance addictive disorder in the American Psychiatric Association's Diagnostic and Statistical Manual 5 ("DSM 5"), rather than its former classification as a disorder of impulse control.  Pl.'s Opp'n at 31–36.  But these arguments are unavailing.

First, as the Court noted, although the CCA regulates the responsibilities of casinos as they relate to problem gambling behavior, the CCA is silent on any duty owed by casinos to prevent or stop inducing gambling from those that exhibit problem gambling behavior.  Supra at 4–6.

6

Furthermore, if Plaintiff's allegation was that Defendants breached a duty imposed by N.J.A.C. 13:69O-1.2(x), such duty would be to provide adequate training for certain employees to identify problem gambling behavior—a duty that Plaintiff concedes Defendants were in full compliance with at all relevant times.  See Am. Compl. ¶ 31.

Second, the affirmative enticement in this case is no different than the affirmative enticement in Hakimoglu and Taveras.  In Hakimoglu, the plaintiff alleged that the defendants "intentionally and maliciously enticed him to gamble . . . by providing him with free alcoholic beverages and other amenities" and "that after he became visibly and obviously intoxicated the defendants invited and permitted him to continue to gamble in that condition for lengthy periods." Hakimoglu, 70 F.3d at 292 (internal quotation marks removed).  In Taveras, the plaintiff alleged that casino employees "refused to permit [her] family members from taking her home and continued to allow her to gamble in spite of clear indications that she was a compulsive gambler" and that "she received numerous enticements from Defendant-casinos, including casino event promotions, gambling tournament invitations, promotions for free televisions, as well as free limousine rides, hotel rooms, food, entertainment, and gift coupons." Taveras, 2008 WL 4372791, at *1–2 (alteration in original) (internal citations and quotation marks removed).  Yet in both those cases, the courts held that the defendants had no common law duty to the plaintiffs.  See supra at 5.

Third, despite the inclusion of gambling addiction as a substance addiction disorder in the DSM 5, the New Jersey legislature, as the Court has already noted, has not yet seen fit to require casinos to prevent or stop inducing gambling from those that exhibit problem gambling behavior. Supra at 4–6.  Furthermore, alcohol dependence was recognized as a substance addiction disorder at the time Hakimoglu was decided, In re in re Sullivan, 904 F.2d 826, 833 n.5 (3d Cir. 1990) (noting that the DSM 3 defined alcohol dependence and alcoholism as a pathological substance addiction disorder), and the Hakimoglu court refused to extend common law dram-shop liability—i.e., liability of a liquor licensee for serving alcohol to a visibly intoxicated patron—to casino gambling losses, Hakimoglu, 70 F.3d at 293–94 (quoting the district court's reasoning that "extending common law dram-shop liability into an area so fully regulated, without a glimmer of legislative intent, is not a predictable extension of common law tort principles, and has not been foreshadowed by the New Jersey courts").  As such, the classification of gambling addiction as a more serious substance addiction disorder alone is not enough to impose such a negligence common law duty of care on Defendants.

For these reasons, Plaintiff's negligence claim is dismissed.

7

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motions, ECF Nos. 50 and 51, are **GRANTED**, and Plaintiff's Complaint is **DISMISSED**.  This matter is hereby **CLOSED**.

**SO ORDERED.**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**
